THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL DANIELS, Defendant-Appellant.

Fourth District   No. 4—84—0783

Opinion filed July 18, 1985.

WEBBER, J., dissenting.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul Lee Stone, State's Attorney, of Sullivan (Robert J. Biderman and Peter C. Drummond, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant was charged in the circuit court of Moultrie County with theft under $300 (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)). Defendant's motion to suppress his confession made to police was denied after hearing. At the subsequent stipulated bench trial, defendant was found guilty of theft under $300 and sentenced to a six-month term of probation. On appeal, defendant contends: (1) The trial court erred by refusing to suppress his confession because it was obtained as a result of defendant's illegal detention for custodial interrogation, and (2) there was an abuse of discretion to sentence the defendant to six months' probation where the defendant had no prior criminal record.

The evidence presented at the hearing on defendant's motion to suppress established that at some time during August 17 or 18, 1984, a theft occurred at the Richardson Car Wash in Moultrie County. The theft was accomplished by inserting 147 bogus dollar bills into a malfunctioning coin machine and in return removing the real quarters. Officer Joe Thompson of the Sullivan police department investigated the crime and received a tip that a car which resembled the one driven by defendant was seen in the vicinity of the car wash during the period in question.

At about 8:30 p.m. on August 18, 1984, Officer Thompson approached defendant, a 17-year-old high school student, and his four companions as they were leaving a grocery store in Sullivan. At the motion to suppress hearing, the defendant testified that the officer came up to the group and said, "I would like all of you guys to come up to the police station at 9:00." According to the defendant, "he said he needed to talk to us, ask all of us a few questions." Officer Thompson then went into the IGA store. With respect to the meeting in the parking lot at the IGA store, Officer Thompson testified he stated, "Mike, I need to talk to you. If you would come to the police station, I would sure appreciate it." At the appointed time, defendant arrived

with his companions at the police station and was ushered into an office by Thompson. They were then joined by another police officer, Lou Ann Reed.

The testimony conflicted regarding at what point defendant was informed that he was under arrest. Defendant testified that Officer Thompson immediately told him he was under arrest for theft; Thompson and Reed testified that defendant was not so informed until after making the confession at issue. It is undisputed, however, that ·defendant was immediately informed of his *Miranda* rights and signed a written waiver of those rights. It is also uncontroverted that at no point up until the time that defendant confessed was he told that he was free to leave. Officers Thompson and Reed testified that the defendant would have been given the opportunity to leave if he had so desired and would not have been stopped if he had indicated that he was going to leave the police station.

During the questioning of defendant, there was a plastic bag containing the bogus dollar bills on the desk between defendant and Officer Thompson. Defendant initially denied any involvement in the theft. According to Thompson, defendant was told that if it was subsequently determined that defendant lied about his involvement, a report to that effect would be sent to the State's Attorney's office. Defendant testified that he was told he could be convicted for perjury or some related crime if he did not tell the truth about his involvement in the theft.

Thompson testified that he showed defendant a catalog containing equipment used to lift fingerprints from paper and told defendant that the bogus dollar bills were going to be sent to the crime lab for fingerprinting. The officer testified that he did not indicate to the defendant that he could be convicted for perjury and that the word perjury was never used by the police officers. Thereafter, defendant confessed to the theft and was taken through the formal arrest procedure, after which he was released on a notice to appear.

Defendant's motion to suppress the confession alleged that he was detained for custodial interrogation without probable cause and that such detention intrudes on interests protected by the fourth amendment, and the fruits of such an arrest, including any inculpatory statements made by one so detained, must be suppressed. *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.

In *Dunaway*, after obtaining some preliminary information insufficient to support probable cause, three detectives located the defendant at a neighbor's house. He was taken into custody; and although he was not told he was under arrest, it was indicated that he would

have been physically restrained if he had attempted to leave. He was taken to the police headquarters in a police car, placed in an interrogation room, and questioned by police officers after he was given the required *Miranda* warnings. The Supreme Court found his detention for custodial interrogation was similar to that which accompanies a traditional arrest. The court concluded that he was *seized* within the meaning of the fourth amendment; since the seizure was based on less than probable cause, it was held illegal.

The leading case in Illinois on this issue is *People v. Townes* (1982), 91 Ill. 2d 32, 435 N.E.2d 103. In *Townes*, the defendant, who was suspected of a rape, was approached by two police officers who stated that they wanted to question defendant at the police station and gave him the choice of accompanying the officers in their squad car or driving his own car. The defendant chose to ride with the officers. The defendant was at the police station for some 12 hours or more; and during that period of time, five interviews were conducted. He was given the *Miranda* warnings before each interview. During the period of time that the defendant was at the police station, there was also a search of the Townes' home and car. In *Townes*, as in the case at bar, the defendant was never informed that he could leave the police station nor was he ever informed that he was not under arrest. At the final interview, defendant Townes made statements implicating himself in the rape which were introduced against him at trial. In *Townes*, the Illinois Supreme Court found the defendant's detention resembled a traditional arrest similar to *Dunaway*. The supreme court found that the defendant's fourth amendment rights were violated when, without probable cause, he was subjected to a lengthy interrogation at the police station. Since the elicited statements were the product of an unlawful detention, the motion of suppression was granted.

■ The relevant inquiry in these cases is whether, considering the totality of the circumstances, a reasonable man, innocent of any crime, would have considered himself under arrest. *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870; *People v. Miller* (1980), 89 Ill. App. 3d 973, 412 N.E.2d 175.

The factual background in this case is considerably different than that in *Townes* and *Dunaway*. The detention here did not so resemble a traditional arrest. In this case, the police officer did not have probable cause to arrest Daniels. Officer Thompson and the defendant agree as to the conversation in the IGA parking lot as mentioned above. In addition, defendant indicated he inquired as to why they were to go to the police station. In answer, the officer said, "Just

come up there, we have to ask you a few questions." At 9 p.m., the defendant and his four friends reported to the police station. Officer Thompson greeted them and asked, "Well, who's going to be first?" The defendant volunteered to go first and subsequently was ushered into an office. The *Miranda* rights were read to defendant. During the interview process, the officer did make it clear to the defendant the importance of telling the truth and did indicate to the defendant that if his fingerprints showed up on the bogus money, a report would be forwarded to the State's Attorney's office and the report would indicate to the State's Attorney that the defendant had lied to the police about his involvement in the theft. The defendant then admitted his involvement and was placed under arrest for theft.

The trial court was confronted with a conflict in the testimony between the defendant and the police officers. Daniels knew the police officer well enough to call him by his first name and was not afraid of him. As indicated by the State in their argument, the actions of the officer are certainly not conducive to lead a reasonable man innocent of any crime to think that he is going to be arrested if he shows up at the police station. Neither is there testimony about any threats or other coercion once he arrived at the police station in the company of his friends.

At the police station, the officer did not pick on any particular person to be interviewed first, but asked which one of them wanted to go first. The defendant volunteered to go first and tell what he knew concerning the theft. The defendant's testimony indicates as to the length of time of the interview process, "I don't know, maybe half hour, twenty-five minutes," whereas in *Townes*, the interview process was conducted over a period of 12-13 hours. This was a minimal intrusion upon the defendant's time. There was no evidence of any physical restraint against the defendant, no show of weapons or force, and no evidence of any booking procedures or fingerprinting. In *Townes*, the detention of the defendant was more than just a limited intrusion; he was subjected to a continuous questioning which exceeded such bounds. In this particular case, the defendant cannot complain.

The statement by the police officer that if the defendant's prints were found on the bogus bills it would indicate his involvement in the theft was not coercion. It may have contributed to the defendant's admitting his involvement, but this could have been in the hopes of obtaining some type of leniency in the future. This is not sufficient reason to yield the statements involuntary.

▇ The facts do not show a seizure within the meaning of the fourth amendment. As the Supreme Court stated in *United States v.*

*Mendenhall* (1980), 446 U.S. 544, 553-54, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877:

> "We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 *** "

The Supreme Court in *Mendenhall* indicated the need for police questioning as a tool in the effective enforcement of criminal laws and that without such investigation those who were innocent might be falsely accused, and those who were guilty might wholly escape prosecution and many crimes would go unsolved. The Supreme Court gave examples of circumstances that might indicate a seizure where the person did not attempt to leave: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

In *United States v. Sharpe* (1985), 470 U.S. ___, 84 L. Ed. 2d 605, 105 S. Ct. 1568, the court dealt with the question of fourth amendment seizures. The issue in that case, insofar as it dealt with defendant Savage, was whether the detention of the defendant Savage and his vehicle for approximately 20 minutes violated the fourth amendment guarantee against unlawful search and seizure. The Supreme Court made it clear that the fourth amendment is not a guarantee against all searches and seizures but only against unreasonable searches and seizures. Although, as indicated, *Sharpe* deals with an investigative stop and not an interview process as in the instant case, the statements made by the Supreme Court are of help in a determination of the issues in this case. In *Sharpe*, the court stated that the *brevity of the invasion* of the individual's fourth amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion. The Supreme Court stated:

> "[W]e have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes. [Citations.] Much

as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.

\* \* \*

In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. \*\*\* A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But '[t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, in itself, render the search unreasonable.' [Citations.] The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." 470 U.S. ___, ___, 84 L. Ed. 2d 605, 615-16, 105 S. Ct. 1568, 1575-76.

In this case, the actions of Officer Thompson were entirely appropriate. There is the need to arrive at a balance between necessary good police investigation and work and an individual's rights under the constitution. Although probable cause did not exist, we conclude no seizure took place. There was no violation of defendant's fourth amendment protections.

■ The defendant also argues that the trial court abused its discretion in sentencing him to six months' probation and that an order of supervision was a more appropriate sentence. Certainly an order of supervision may have been a slightly more lenient sentence. However, to argue that a six-month probation sentence is an abuse of discretion tends toward the absurd. Suffice it to say that the imposition of a sentence is a matter of judicial discretion and will not be altered on review absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882). It is clear the sentence imposed in this case did not represent an abuse of discretion.

The judgment of the circuit court of Moultrie County is affirmed.

Affirmed.

GREEN, P.J., concurs.

JUSTICE WEBBER, dissenting:

I respectfully dissent from the finding of my learned colleagues. While I do not pretend to find the "bright line" sought in *Sharpe*, nor to be the "creative judge" mentioned in the same opinion, this case calls for reversal.

After a confession has been obtained, it is always easier to indulge in some retroactive ratiocination by which it can be found to be valid; it is much more difficult to apply the protections of the fourth amendment to an admitted miscreant.

The principal opinion ignores what I deem to be the critical issue in all of these cases: probable cause. This was the central point in *Townes*. The majority stated: "Accordingly, we hold that defendant's fourth amendment rights were violated when, *without probable cause*, he was subjected to a lengthy interrogation at the police station." (Emphasis added.) (*People v. Townes* (1982), 91 Ill. 2d 32, 39, 435 N.E.2d 103, 106.) Even the dissent in *Townes* bore down on the same point. "[T]he subsequent detention and interrogation cannot, in my opinion, be said to be without probable cause." 91 Ill. 2d 32, 45, 435 N.E.2d 103, 109.

In the instant case the only information possessed by the officer was a tip (anonymous, so far as the record discloses) that a car resembling that belonging to defendant had been seen in the area at about the time of the offense. Compare this with what the officers had in *Townes*: a vague description of the defendant as a short black man with a thin build, a moustache, an "Afro" hair style, and thick and full lips; they also knew that the victim had struck him on the head with an iron bar and had bit his finger. The defendant's appearance matched all of these indicia, yet the supreme court held that there was not probable cause to detain. In the instant case there is no physical description of the defendant, only that a car "resembling" his was seen.

More telling is the testimony of the officer that he did not believe he had probable cause to arrest the defendant until after obtaining the confession. Probable cause to arrest may require a greater quantum of evidence than probable cause to detain, but neither is present here.

It seems quite apparent that the officer had arrest in mind when he asked the defendant to appear at the station house. General on-the-scene questioning of a *Terry* variety would have been perfectly possible in the parking lot of the grocery store. However, it would not have been possible to exhibit at that location the plastic bag containing the bogus bills and the catalogue of equipment used to lift finger-

prints. If all that was wanted was some further information concerning the theft, a verbal description would have been entirely adequate without all the demonstrative evidence. Almost anyone will confess when in the presence of the Iron Maiden or the thumbscrew.

The majority attempts to distinguish *Townes* and *Dunaway* on a factual basis. This is a bootless exercise. The legal principle remains: in neither *Townes, Dunaway*, or the instant case did probable cause exist.

I would reverse the trial court and remand for trial without the tainted confession.